3:23-mj-00034

DISTRICT OF OREGON   )
          ) ss. AFFIDAVIT OF ADAM OTTE
COUNTY OF MULTNOMAH )

**Affidavit in Support of a Criminal Complaint**

I, Adam Otte, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7).  I am currently employed as a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice, and have been so employed since 2004.  In that capacity, I investigate violations of the Controlled Substances Act, Title 21, United States Code, Section 801, *et. seq*.  Until September 2012, I was assigned to the Seattle Field Division Office.  In September 2012, I was assigned to the Salem, Oregon Resident Office.  I have completed sixteen (16) weeks of DEA Basic Agent training at the Justice Training Center in Quantico, Virginia.  I am familiar with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations.  I have been a case agent on multiple investigations involving organizations trafficking several controlled substances to include cocaine, heroin, methamphetamine, and fentanyl.  I have been the lead case agent or a co-case agent on several wiretap investigations as well as numerous other investigations.  In each of these investigations, I have participated in directing the course of the investigation.  These investigations have resulted in the seizure of controlled substances as well as millions of dollars of United States currency and the federal prosecution of well more than 100 defendants.

///

///

**Affidavit of DEA Special Agent Adam Otte**              **Page 1**

**Purpose of Affidavit**

2.      This affidavit is submitted to support criminal complaints and arrest warrants for

the following:

a.      Gerardo Daniel Quevedo-Quiroz, Hispanic male, date of birth xx/xx/1994

(hereinafter "QUEVEDO"), for possession with intent to distribute the controlled

substance fentanyl, in violation of Title 21, United States Code, Section 841(a)(1), and

possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18,

United States Code, Section 924(c)(1)(A), and

b.      Stephanie Lynn Carbajal, Hispanic female, date of birth xx/xx/1986 (hereinafter

"CARBAJAL") for unlawful possession a firearm by a prohibited person, in violation of

Title 18, United States Code, Section 922(g)(1).

3.      I have obtained the facts set forth in this affidavit through my personal

participation in the investigation described below; from oral and written reports of other law

enforcement officers; and, from records, documents and other evidence obtained during this

investigation.  I have obtained and read official reports prepared by law enforcement officers

participating in this investigation and in other related investigations.

4.      On February 3, 2023, United States Magistrate Judge Stacie F. Beckerman,

District of Oregon, signed a warrant (23-MC-103) allowing officers to receive geolocation data

for telephone 986-600-8238 (referred to as "Quevedo Phone 1") believed to be used by

QUEVEDO.  On February 16, 2023, United States Magistrate Judge Youlee Yim You, District

of Oregon, signed a warrant (23-MC-160) allowing officers to receive geolocation data for

telephone 626-567-9363 (referred to as "Quevedo Phone 2") also believed to be used by

QUEVEDO.

**Affidavit of DEA Special Agent Adam Otte**                                                    **Page 2**

5.      DEA SA Thomas has monitored the data received for Quevedo Phones 1 and 2 and reported to me that this data showed that both phones traveled southbound from Oregon on February 25, 2023, to southern California.  The data is generally received at 10 minute intervals and showed that both phones appeared to travel by vehicle based on the movement of the two phones.  SA Thomas noted that sometimes the data showed that both phones appeared to be in the same area, although the data was rather imprecise with an accuracy of several thousand meters.  There were also times when it appeared one or both of the phones appeared to be powered off and officers did not receive data.  However, the data did show that both phones traveled from Oregon to southern California together.

6.      Subsequent data showed that on February 28, 2023, Quevedo Phones 1 and 2 began traveling north from southern California and stopped moving northbound near Fresno, California that evening.  On March 1, 2023, data showed that Quevedo Phones 1 and 2 began traveling northbound again but stopped several times and would remain in one area for periods of approximately one hour or longer.  Again this data was imprecise and there were times when no data was received from one or both phones.  The data also showed that both phones appeared to be traveling by vehicle northbound along I-5.  Late in the evening, data for Quevedo Phone 2 showed that it was in the area of Yreka, California while no data was received from Quevedo Phone 1 (indicating it may have been powered off).  Quevedo Phone 2 remained in this area until approximately 12:30 a.m. on March 2, 2023.

7.      SA Thomas and Salem Police Department (SPD) Sgt. Dawson traveled to Yreka during this time to look for any potential vehicles QUEVEDO may be driving.  Officers had previously established surveillance in southern Oregon anticipating QUEVEDO's arrival.  At that time, officers were unaware of the vehicle in which QUEVEDO was traveling.  At one point

**Affidavit of DEA Special Agent Adam Otte**                                                    **Page 3**

while in northern California close to the Oregon state line, SA Thomas observed a recreational vehicle (referred to as the "RV") in the area of Quevedo Phone 2.  SA Thomas observed that the spare wheel on the back of the RV had a Seattle Seahawks cover on it.  At this time, officers did not know that QUEVEDO was traveling in this vehicle and did not follow the RV.

8.      Subsequent data showed that Quevedo Phones 1 and 2 appeared to continue traveling north along I-5 into Oregon and then stopped moving near Medford, Oregon at 1:40 a.m.  Data showed that Quevedo Phone 1 remained in the same area for approximately one hour while no additional data was received for Quevedo Phone 2.  During this time, DEA Task Force Officer (TFO) Zuniga positioned himself so that he could observe vehicles entering I-5 northbound near milepost 30 in Medford.  At approximately 2:45 a.m., TFO Zuniga observed the RV turn onto the ramp leading to I-5 northbound.  Officers then followed the RV north on I-5 to Canyonville, Oregon located approximately 70 miles north of milepost 30.  The RV parked for more than an hour.  During this time, officers did not receive geolocation data for either Quevedo Phone 1 or 2.  At approximately 5:00 a.m., SPD Cpl. Garland observed the RV move and stop at a gas station.  There SA Thomas observed QUEVEDO exit the driver's side and later re-enter. Officers did not observe a passenger exit the RV during that time.  The RV then re-entered I-5 northbound and officers followed it for more than 30 minutes to Sutherlin, Oregon.  There the RV drove to a couple restaurants, but no one exited.  The RV then continued northbound on I-5 and stopped briefly at a rest area.  Officers had not received any geolocation data for Quevedo Phone 1 or 2 since approximately 2:40 a.m., but at 6:22 a.m. data showed that Quevedo Phone 2 was near this rest area. The RV then continued northbound again.

9.      Officers followed the RV north to Cottage Grove, Oregon where DEA TFO Miller, who is a drug canine handler for Oregon State Police (OSP), initiated a traffic stop on the

**Affidavit of DEA Special Agent Adam Otte**                                      **Page 4**

RV for failure to maintain its lane.  The location and movement of Quevedo Phone 2, though

imprecise, was consistent with the location and movement of the RV during this time.  Data was

not received for Quevedo Phone 1.

10.     TFO Miller was assisted by OSP Trooper Hargis.  Trooper Miller reported that,

looking through the passenger window, he observed aluminum foil on the table located directly

behind the driver's seat of the RV.  Trooper Miller observed a dark marking on this foil, which

he believes is consistent with the residue left behind after a person uses such foil to burn and

inhale a controlled substance such as a fentanyl tablet.

11.     Officers identified the driver as CARBAJAL and the sole passenger as

QUEVEDO.  During the encounter, CARBAJAL told officers that she and QUEVEDO had

traveled to Sacramento, California to visit family for three days.  QUEVEDO told officers that

CARBAJAL had picked him up in Sutherlin, Oregon and that she was contemplating buying the

RV.  Officers confirmed that there was an outstanding Oregon state arrest warrant for

QUEVEDO for Failure to Appear and took him into custody.  He was later cited and released on

this warrant.

12.     TFO Miller applied his canine to the exterior of the RV and reported that the

canine provided a positive alert to the presence of controlled substances.  TFO Miller's canine is

trained to detect the odors of methamphetamine, heroin, and cocaine, but not fentanyl.

13.     Officers then searched the RV and located a plastic bag concealed inside

aluminum foil sitting on the bathroom sink in plain view.  Inside this bag were two separate

pieces of plastic tied tight containing bluish green tablets along with loose tablets of a variety of

colors.  The two packages of bluish green tablets appeared to be approximately the same size and

together weighed approximately 224 grams.  I estimate that each of these packages contain

**Affidavit of DEA Special Agent Adam Otte**                                                                 **Page 5**

approximately 1,000 tablets, for a total of 2,000 tablets, based on my knowledge of previous

seizures of similar looking tablets that DEA chemists have confirmed contained fentanyl.  These

tablets were marked with M on one side and 30 on the other.  The remaining tablets of varying

colors weight approximately 118 grams inside the plastic bag and again I estimate the total to be

approximately 1,000 tablets.  These tablets were also marked with "M" and "30."  Officers are

unable to perform field tests on tablets to detect fentanyl.  In total, there were approximately

3000 tablets found in the bathroom.

14.     In addition to those approximately 3000 tablets, officers also located a plastic case

concealed under the stove.  Inside this case was a plastic bag containing light blue tablets also

marked with "M" and "30."  Those tablets weighed approximately 322 grams and there were

approximately 3,000 tablets.  Thus, in total, there were approximately 6,000 tablets found in the

RV.  The tablets appear very similar to tablets seized in prior investigations that were later

confirmed by DEA chemists to contain fentanyl.

15.     Officers also located a Ruger SR9 9mm pistol in a drawer in the kitchen area.

The pistol had one round in the chamber and 14 additional rounds in the magazine that was

inserted in the pistol.  I know through training and experience that Ruger firearms are not

manufactured in the state of Oregon and that this weapon, therefore, travelled in interstate

commerce.

16.     I know that drug traffickers are increasingly selling counterfeit M30 prescription

oxycodone tablets that are manufactured with fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-

piperidinyl] propenamide), a Schedule II controlled substance.  These counterfeit tablets are

designed to replicate real 30 mg Oxycodone Hydrochloride tablets, which are round, blue in

color, and stamped with an "M" and "30" on them.  Drug dealers regularly counterfeit these

**Affidavit of DEA Special Agent Adam Otte**                                   **Page 6**

tablets and, while attempting to replicate the round shape, the blue color, and the stamp of "M" and "30," they are instead manufacturing these tablets with fentanyl as the active ingredient.  I have seen and seized tens of thousands of these counterfeit M30 tablets and lab reports have confirmed the presence of fentanyl within many of them.  I know a user amount of a counterfeit M30 pill is often one pill, which can either be ingested or burned and inhaled.  I know some addicts will smoke up to 10 to 15 tablets per day.  One addict with whom I am familiar reported using up to 30 tablets per day.  I know that a person possessing several thousand suspected fentanyl tablets does not possess those tablets for personal use but rather such a quantity indicates that they are possessed for purposes of further distribution.

17.     I also know that firearms are "tool of the trade" for drug traffickers.  I know that drug dealing is very dangerous business and that drug dealers regularly arm themselves with firearms in furtherance of their drug trafficking activities to protect their illegally possessed controlled substances from someone attempting to rob them, as well as the cash connected to their illegal drug dealing activities.  I also know that drug dealers possess firearms and are often willing to use them in an effort to prevent their apprehension by law enforcement, to settle outstanding debts and disagreements with customers, and to prevent or settle disputes with other drug dealers.

18.     Following the seizure of the suspected fentanyl and the firearm, TFO Miller read *Miranda* rights to both QUEVEDO and CARBAJAL and interviewed both subjects separately. QUEVEDO reported that all of the tablets found in the RV belonged to him and contended that the colored tablets were fake, meaning they did not contain a controlled substance such as fentanyl.  QUEVEDO also reported that he was aware of the gun in the RV and that he did hand

**Affidavit of DEA Special Agent Adam Otte**                                                    **Page 7**

it to CARBAJAL but that it was not his gun.  CARBAJAL reported that she had traveled to

Sacramento but did not provide any information regarding the suspected fentanyl or the gun.

19.     TFO Zuniga and SA Thomas later interviewed both subjects separately as well.

Officers reported that QUEVEDO did not appear honest and told officers that the tablets may

have been in the RV before he took possession of the RV.  CARBAJAL reported that she was

aware of the gun and had stored the gun in her purse for QUEVEDO at times.  CARBAJAL

reported using methamphetamine, but denied ever using fentanyl tablets.  CARBAJAL also

reported that she did not know the tablets were in the RV.  I later asked CARBAJAL about the

used foil TFO Miller reported observing.  CARBAJAL stated that she did not recall seeing the

foil and had never observed QUEVEDO using or smoking any tablets in the RV.

20.     I have reviewed CARBAJAL's criminal record which shows she was convicted of

the felony crime of Failure to Appear in the First Degree, a violation of ORS § 162.205, in

Marion County, Oregon, on November 24, 2009, for which she was sentenced to 24 months'

imprisonment, and that she is, therefore, prohibited from lawfully possessing a firearm or

ammunition.

## Conclusion

21.     Based on the foregoing, I have probable cause to believe, and I do believe, that

Gerardo Daniel Quevedo-Quiroz committed the crimes of possession with intent to distribute a

controlled substance, fentanyl, in violation of Title 21, United States Code, Section 841(a)(1),

and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18,

United States Code, Section 924(c)(1)(A).  I further have probable cause to believe, and I do

believe, that CARBAJAL committed the crime of unlawful possession of a firearm by a

prohibited person, in violation of Title 18, United States Code, Section 922(g)(1).  I therefore

**Affidavit of DEA Special Agent Adam Otte**                                                    **Page 8**

request that the Court issue criminal complaints and arrest warrants for Gerardo Daniel

Quevedo-Quiroz and Stephanie Lynn Carbajal.

22.     Prior to being submitted to the Court, this affidavit, the accompanying complaint

and the arrest warrant, were all reviewed by Assistant United States Attorney Thomas H.

Edmonds.  AUSA Edmonds advised me that in his opinion the affidavit and complaint are

legally and factually sufficient to establish probable cause to support the issuance of the

requested criminal complaints and arrest warrants.

> _By phone pursuant to Fed R. Crim. P. 4.1_
> ADAM OTTE
> Special Agent
> Drug Enforcement Administration

Subscribed and sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone at ___5___ a.m./p.m. on the ___2nd___ day of March 2023.

_____
HONORABLE STACIE F. BECKERMAN
UNITED STATES MAGISTRATE JUDGE

**Affidavit of DEA Special Agent Adam Otte**                                                     **Page 9**